# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JACQUELINE NORMAN,

Appellant,

v.

ASHBURN SQUARE HOMEOWNERS' ASSOCIATION, INC.,

Appellee.

No. 2D2023-1393

_____

September 13, 2024

Appeal from the County Court for Hillsborough County; Joseph M. Tompkins, Judge.

Eduardo A. Maura and Luis F. Quesada of Ayala Law, P.A., Miami, for Appellant.

Jessica C. Burley of David J. Lopez, P.A., Tampa, for Appellee.

ATKINSON, Judge.

Appellant, Jacqueline Norman, appeals the county court's final summary disposition entered against her in a small claims proceeding in favor of Split Second Towing & Transport, Inc., and Ashburn Square

Homeowners' Association, Inc. (the Association).[1]  We reject Ms. Norman's argument that a jury could conclude that she was not parked in violation of the Association's parking rules without further discussion. We write to address her arguments that section 715.07(2)(a)5, Florida Statutes (2020), and the Association's private parking rules required that the Association provide her with personal notice of her parking violation and that the Association's failure to provide such notice supports her claim that it improperly towed her vehicle in violation of the statute.  For the reasons explained below, we affirm.

## I. Background

Section 715.07 permits an owner of real property to "cause any vehicle or vessel parked on such property without her or his permission to be removed by a person regularly engaged in the business of towing vehicles or vessels" and provides a cause of action for damages, attorney's fees, and court costs "[w]hen a person improperly causes a vehicle or vessel to be removed."  § 715.07(2), (4).  Ms. Norman filed a claim in small claims court alleging that the Association violated section 715.07(2) because she parked her vehicle in an area for which she had permission to park and, because section 715.07(2) only permits the towing of vehicles that are parked on property "without . . . permission," the Association improperly caused her vehicle to be towed in violation of the statute.  Ms. Norman alleged that the towing was improper because her vehicle was towed for "park[ing] on grass" even though she was not

---

[1] This appeal was dismissed as to Split Second Towing for lack of jurisdiction because an interrelated claim remained pending before the trial court.  *See Farrey's Wholesale Hardware Co. v. Coltin Elec. Servs., LLC*, 263 So. 3d 168, 176 n.6 (Fla. 2d DCA 2018); *Gator Boring & Trenching, Inc. v. Westra Constr. Corp.*, 210 So. 3d 175, 180 (Fla. 2d DCA 2016); *cf.* Fla. R. App. P. 9.110(k).

2

actually "parked" on the grass because "[o]nly a small part of one of the rear tires of [her] vehicle was, if ever, in contact with the grass." Because, as "a lawful resident . . . with her parking permit clearly displayed," she was otherwise parked in an area for which she had the Association's permission, Ms. Norman asserted in her complaint that the removal of her vehicle was improper in violation of section 715.07(2). In sum, she alleged that the Association's "fail[ure] to strictly comply with the requirements set forth in § 715.07" was based on its "improperly caus[ing] [her] vehicle to be towed on the false premise that it was 'parked' on the grass."

The Association filed a motion for summary disposition pursuant to Florida Small Claims Rule 7.135. The Association relied on pictures illustrating that Ms. Norman's vehicle had been parked with the right rear tire on the grass. The Association argued that Ms. Norman's vehicle was properly towed because its governing rules provide that "vehicles parked on or across any grassed surface . . . are subject to towing at owners['] expense" and that therefore Ms. Norman parked her vehicle in an area for which she did not have the Association's permission to park.

Ms. Norman filed a written response in which she argued for the first time that there was a genuine issue of material fact as to whether the Association provided her with "personal notice of the conditions that will subject her Vehicle to removal," which she contended was required by section 715.07. After the trial court announced it was granting summary disposition in the Association's favor, but before it reduced that ruling to a written order, Ms. Norman filed a motion for reconsideration in which she argued another new claim for the first time—this time, that the Association allegedly did not follow its own parking rules, which only permit the Association to have a vehicle towed

3

"if it remains in violation of the terms and conditions of this Declaration following notice by the Association." Therefore, Ms. Norman argued that she "had permission to park at the property—even if parked in violation of the rules—until [the Association] gave her notice of the violation and [she] then failed to correct it."

The trial court issued a written order that granted the Association's motion for summary disposition and denied Ms. Norman's motion for reconsideration. The trial court rejected Ms. Norman's new claim in her motion for reconsideration, reasoning that "[w]hether [the Association]'s tow was lawful under its own rules is a separate question from determining whether a vehicle had permission from the property owner to park on the grass under section 715.07(2)" and that "the mere failure to notify Ms. Norman of the parking violation does not constitute implied permission to park on the grass." The trial court also noted that "while Ms. Norman could have raised another claim against [the Association] for failure to comply with its own rules, she did not do so. She asserted only a violation of section 715.07(2)." On appeal, Ms. Norman raises the arguments she made below concerning the Association's failure to comply with the notice requirements imposed by section 715.07 and its parking rules.

## II. Statutory Notice

In its written order, the trial court did not expressly comment on Ms. Norman's argument that personal notice was required under section 715.07. And Ms. Norman has not provided a hearing transcript from which we can discern the extent to which the issue was discussed at the hearing. The trial court did, however, note in its order that the Association met all the relevant statutory requirements in section 715.07(2)(a)1–9, which encompasses the statutory notice requirement,

4

suggesting that the trial court rejected Ms. Norman's argument on the merits. We agree with the trial court that the Association met the statutory notice requirement, and we further reject Ms. Norman's argument as one concerning an unpled claim.

**A.**

Section 715.07(2)(a)5 provides, in relevant part, the following:

5. Except for property appurtenant to and obviously a part of a single-family residence, and except for instances when notice is personally given to the owner or other legally authorized person in control of the vehicle or vessel that the area in which that vehicle or vessel is parked is reserved or otherwise unavailable for unauthorized vehicles or vessels and that the vehicle or vessel is subject to being removed at the owner's or operator's expense, any property owner or lessee, or person authorized by the property owner or lessee, prior to towing or removing any vehicle or vessel from private property without the consent of the owner or other legally authorized person in control of that vehicle or vessel, must post a notice meeting the following requirements:

. . . .

b. The notice must clearly indicate, in not less than 2-inch high, light-reflective letters on a contrasting background, that unauthorized vehicles will be towed away at the owner's expense. The words "tow-away zone" must be included on the sign in not less than 4-inch high letters.

§ 715.07(2)(a)5.b.

Ms. Norman misconstrues the statute as including a personal, violation-specific notice requirement that, under certain circumstances, applies to the exclusion of the signage method of providing general notice described in the statute. However, under the language of the statute, general notice by the posting of signs indicating "unauthorized vehicles will be towed" in compliance with section 715.07(2)(a)5.a–f is all the notice that is required to entitle a property owner to have any vehicle parked without permission removed from the property. *See* § 715.07(2),

5

(2)(a)5, (2)(a)5.g.  The personal notice provision in section 715.07(2)(a)5 serves as an *exception* to the general notice requirement described in section 715.07(2)(a)5.a–f.  The language of section 715.07(2) indicates that while a property owner has the option to "personally give[]" notice to a vehicle owner whose vehicle is parked without permission, the property owner is not obligated to do so if he or she has complied with the general notice requirement effectuated by signs indicating that "unauthorized vehicles will be towed."  *See id.* ("*[E]xcept for* instances when notice is personally given . . . , any property owner . . . prior to towing or removing any vehicle . . . must post a notice . . . [that] clearly indicate[s] . . . that unauthorized vehicles will be towed away at the owner's expense." (emphasis added)).  That section can only be read as providing two alternative means of notice—notice that is "personally given" or generally provided through signage—and cannot be read to require the former in some circumstances and the latter in others.

Given that the only fair reading of the statute indicates that notice by either method is sufficient—that personal notice is an exception to the general method of the posting of signs—then it can only be concluded the notice provided by those signs indicating that "unauthorized vehicles will be towed" is notice that entitles a property owner to tow a vehicle parked in an area of the parking lot for which the driver lacks "permission"— even if that vehicle owner is generally authorized to park in the parking lot in question.  In defiance of the statute's language, Ms. Norman argues that the option to provide notice by posting a sign was inapplicable in this case because posted notice only concerns "unauthorized vehicles" and she "was authorized to be at the Property as a resident thereof." While the phrase "unauthorized vehicles" could be understood to only permit towing based on the status of the vehicle—that is, authorized

6

versus unauthorized—in context it is better understood to satisfy the statutory notice requirement for an individual who would be otherwise authorized to park in a parking lot but whose vehicle is not authorized to park in a specific parking space or area of that lot. *See Advisory Op. to Governor re Implementation of Amend. 4, the Voting Restoration Amend.*, 288 So. 3d 1070, 1079 (Fla. 2020) (explaining that "the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used" and that a word that "can carry different meanings" might "ha[ve] only one natural reading" in context (first quotation quoting *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657 (1998))). To reach this conclusion, a reader need only read the term "unauthorized" and the phrase "without . . . permission" *in pari materia. Compare* § 715.07(2) (allowing for the towing of vehicles parked "without . . . permission" of the owner), *with* § 715.07(2)(a)5 (allowing for posted notice to warn that "unauthorized vehicles" will be towed); *see also King v. King*, 82 So. 3d 1124, 1131 (Fla. 2d DCA 2012) (explaining that "all parts of a statute must be read *together* in order to achieve a consistent whole" and construing statutory language in two different subsections "in pari materia" (emphasis in original) (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992))). Section 715.07(2) allows a property owner to have a vehicle towed if it is "parked on such property without her or his permission" under the condition that the property owner post notice "that unauthorized vehicles will be towed." It would not make sense for a statute to allow a property owner to tow a vehicle parked *without permission*, impose a notice requirement that informs drivers of the property owner's right to tow *unauthorized vehicles*, but then assign a

7

different meaning to the term "unauthorized" than the meaning of the phrase "without . . . permission." Moreover, the ordinary meaning of one phrase can fairly subsume the other and vice versa. *See Unauthorized*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/unauthorized (last visited Sept. 12, 2024) (defining "unauthorized" as "without authority or permission"); *Authorize*, The American Heritage Dictionary (5th ed. 2011) ("To grant authority or power to. . . . To give permission for (something) . . . ."). The context of the statute only confirms their interchangeability. Because the statute allows a property owner to tow any car parked without permission as long as notice is posted in a manner that informs readers that *unauthorized* vehicles will be towed, it is only reasonable to presume that the notice provision is designed to alert drivers that the property owner is entitled to tow vehicles parked *without permission*. *See King*, 82 So. 3d at 1131 ("Where possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another." (emphasis in original) (quoting *Forsythe*, 604 So. 2d at 455)). As such, the only fair reading of the statute's text compels the reasonable conclusion that the term "unauthorized" in the statutory notice requirement includes any car parked "without . . . permission." *See* § 715.07(2). A car that is authorized to park in the parking lot but is parked in a specific area of the lot where parking is not permitted is an "unauthorized vehicle[]" that is parked "without . . . permission" and is one that the property owner "may cause" to be removed, *see id.*, even if the vehicle is otherwise authorized to park in portions of the lot where permission has not been denied.

As applied to this case, notice posted on signs indicating that unauthorized vehicles will be towed is notice that, as a statutory matter,

entitles the Association to tow a vehicle that is otherwise permitted to park within the community but is parked in a specific area in which parking is prohibited, such as on the grass. The record shows that the Association posted a sign stating that unauthorized vehicles would be towed at the owner's expense. The trial court noted that the Association met all the statutory requirements in section 715.07(2)(a)1–9 and that Ms. Norman was aware of the Association's rules prohibiting vehicles from parking on or across the grassed surface and subjecting vehicles to towing at the owner's expense. Put differently, because Ms. Norman knew her vehicle was not authorized to park on the grass, the signs were sufficient notice entitling the Association to remove her vehicle for parking without permission. As such, to the extent that it rejected Ms. Norman's claim on the merits, the trial court was correct to do so.

**B.**

Even presuming for the sake of analysis that the statute required personal notice under the circumstances of this case, the trial court would have been correct to reject Ms. Norman's argument—raised for the first time in response to the Association's motion for summary disposition—as one asserting an unpled claim. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."). Ms. Norman's statement of claim raised only one claim against the Association—that her vehicle was improperly towed pursuant to section 715.07(2) because she was not parked on the grass and, as a resident of the community with a parking permit, she had permission to park her vehicle where she did. *See* § 715.07(2) (permitting property owners to tow vehicles "parked on such property without her or his permission").

9

There is no reasonable way to construe Ms. Norman's statement of claim as raising any claim other than that, and nowhere did Ms. Norman allege that her vehicle was improperly towed because the Association failed to provide her with a required statutory notice.

Summary disposition in small claims proceedings is warranted when no "triable issue" exists. Fla. Sm. Cl. R. 7.135 (authorizing the trial court to "summarily enter an appropriate order or judgment" "if there is no triable issue"); *see also Save A Lot Car Rental, Inc. v. Tri J. Co. Towing & Recovery*, 325 So. 3d 285, 286 (Fla. 2d DCA 2021) (explaining that small claims rule 7.135 "is similar, although not identical, to Florida Rule of Civil Procedure 1.510" in that "both rules require that a trial court must find there is no triable issue as a matter of law"). The trial court correctly entered summary disposition in favor of the Association because there cannot be a triable issue based on an unpled claim. *See Derouin v. Universal Am. Mortg. Co.*, 254 So. 3d 595, 601 (Fla. 2d DCA 2018) ("An issue that has not been framed by the pleadings, noticed for hearing, or litigated by the parties is not a proper issue for the court's determination." (quoting *Gordon v. Gordon*, 543 So. 2d 428, 429 (Fla. 2d DCA 1989))); *Killick v. Benedict*, 378 So. 3d 715, 716 (Fla. 1st DCA 2024) (affirming trial court's order of summary disposition in a small claims proceeding and reasoning that "the trial court need not entertain plaintiff's new claims, raised for the first time in response to a summary disposition" but "not written[] in his statement of claim"); *cf. Wilson v. Jacks*, 310 So. 3d 545, 547 (Fla. 1st DCA 2021) ("Appellee is correct that there is a substantial body of case law . . . determining that issues and

10

claims not specifically pleaded in a party's complaint or answer cannot be considered by a trial court reviewing a summary judgment motion.").[2]

### III. Notice Under the Association's Parking Rules

### A.

Statutory notice requirements aside, Ms. Norman also argues that the Association's parking rules require personal notice of a particular parking violation that must be given *prior to* towing a vehicle. Her interpretation of the parking rules is well taken. The Association's parking rules provide that "vehicles parked on or across any grassed surface . . . are subject to towing at owners['] expense," but they further provide that the Association may tow a vehicle "if it remains in violation of the terms and conditions of this Declaration following notice by the Association." That the vehicle must "remain[]" in violation "following notice" for towing to be authorized necessarily presumes that notice must follow the particular parking violation. In other words, the rules indicate a chronology in which a parking violation occurs, notice is given for that violation, and then the Association may have it towed only if the vehicle remains in violation. The record does not indicate that the Association provided any such violation-specific notice to Ms. Norman for parking on the grass prior to towing her vehicle.

### B.

However, Ms. Norman is not entitled to relief on her theory based upon a violation of the Association's parking rules because, like the statutory notice theory, it was not a claim that she pled. *See Derouin*, 254 So. 3d at 601; *Killick*, 378 So. 3d at 716; *Wilson*, 310 So. 3d at 547.

---

[2] There is an exception when an unpled claim or defense is tried by consent of the parties, but the record does not support the applicability of that exception. *See Derouin*, 254 So. 3d at 603 (providing that "an unpleaded issue may be tried by consent").

As such, this court need not resolve the question of whether a violation of a defendant's private parking rules—as opposed to a violation of a statutory requirement enumerated in section 715.07—could give rise to a cause of action under section 715.07(4) for an "improper" towing. *See* § 715.07(4) ("When a person *improperly* causes a vehicle or vessel to be removed, such person shall be liable to the owner or lessee of the vehicle or vessel for the cost of removal, transportation, and storage; any damages resulting from the removal, transportation, or storage of the vehicle or vessel; attorney's fees; and court costs." (emphasis added)).

That is not the end of the analysis, however, because Ms. Norman attempts to shoehorn her unpled claim based on a lack of notice pursuant to the parking rules into her pled claim based on her having permission to park where she did. Ms. Norman argues that the Association improperly towed her vehicle because she had permission to park on the grass until such time as the Association notified her of the parking violation and she failed to correct the violation. The trial court was correct to reject this argument because, as it explained,

> Ms. Norman's proposed interpretation of the parking rules is simply unreasonable. Nowhere in the parking rules does it state that a resident is authorized to park on the grass—or in violation of the rules—until told otherwise. . . . [They] simply state that if a car is parked in violation of the rules and remains in violation of those rules after receiving notice of said violation, then [the Association] may tow the vehicle. Whether [the Association]'s tow was lawful under its own rules is a separate question from determining whether a vehicle had permission from the property owner to park on the grass under section 715.07(2).

The trial court correctly recognized that Ms. Norman's new notice theory was a separate claim from the permission theory she pled because the "failure to provide notice [does not] constitute 'permission' under section 715.07(2)." Ms. Norman did not have permission to park her

12

vehicle on the grass because the Association's rules expressly provide that "vehicles parked on or across any grassed surface . . . are subject to towing at owners['] expense."  The fact that the rules require that the Association provide notice and that the vehicle remain in violation following the notice before towing can occur does not *grant* permission until such time as notice is given.  If the Association has yet to provide notice of a parking violation, the vehicle is still parked in an area for which the Association has not provided its permission, but the Association simply has not followed all the necessary conditions precedent to having the vehicle towed.  Even if conceived, for the sake of analysis, as a theory based on the Association's waiver of its right to tow by failure to provide notice to the owner of a vehicle that is otherwise parked in violation of the rules, that does not transform a claim based on a defendant failing to provide notice into one based on a plaintiff obtaining permission.  Ms. Norman did not allege a claim for the improper towing of her vehicle based on a lack of notice; she only alleged a claim for improper towing of her vehicle based on her alleged permission to park where she did, which was solely premised on a factual dispute about whether her vehicle was parked on the grass.  The trial court correctly rejected what it characterized as Ms. Norman's unpled theory of "implied permission" as an impermissible attempt to wedge a post hoc notice-deficiency claim into the permission-based theory underlying the claim she had pled.

Consequently, the trial court did not address Ms. Norman's notice claim under the parking rules on the merits but instead explained why it was rejecting the claim as unpled—that is, the Association's failure to provide Ms. Norman with notice of her parking violation had nothing to do with the fact that she lacked permission under the rules to park her

13

vehicle on the grass. In fact, the trial court implied that Ms. Norman might have had a claim under section 715.07 based on the violation of the Association's parking rules had she pled it. This court need not address that hypothetical analysis because the trial court did not err by declining to reach the merits of that claim based on Ms. Norman's failure to plead it.

While the small claims rules do not impose pleading requirements with the same level of specificity as the rules of civil procedure, this case is not a matter of sufficient pleading. In fact, Ms. Norman's statement of claim more than adequately complied with the applicable pleading requirement to "inform the defendant of the basis and the amount of the claim." Fla. Sm. Cl. R. 7.050(a)(1). The statement of claim informed the Association of "the claim"—a statutory violation of section 715.07—and "the basis" for it—that the Association improperly towed her vehicle because she had permission to park her vehicle in the location that she did because she was a resident and her vehicle was not parked on the grass in violation of the parking rules. Small claims proceedings involve less stringent pleading requirements than ordinary civil claims, but that cannot justify what would effectively be a bait-and-switch. The towing of a vehicle could be "improper" for any number of reasons based on the detailed requirements set forth in section 715.07. Ms. Norman asserted a claim for an improper towing of her vehicle and specified that the basis of her claim was one of the statutory requirements to the exclusion of the others—here, the requirement that to tow a vehicle it must be parked on property "without [the owner's] permission," § 715.07(2), which she predicated solely on the factual dispute that she was not parked on the grass. Nowhere in Ms. Norman's statement of claim is there any indication that her claim was based on the Association's failure to

14

comply with applicable *notice* requirements in the statute or the parking rules, which is a separate claim from whether she had permission to park where she did. As such, this court cannot rely on the less stringent small claims pleading requirements to assign error to the trial court's rejection of Ms. Norman's unpled claim—one which Ms. Norman raised for the first time after more than two years of litigation and in a motion for reconsideration—that the Association improperly towed Ms. Norman's vehicle based on a failure to provide notice under its parking rules. *See Killick*, 378 So. 3d at 716 ("Only matters put in issue by the pleadings may be considered in a civil action [and] [d]espite the flexibility of the small claims rules, the pleading that commences an action is the root from which the claim grows." (citing *Des Rocher & Watkins Towing Co. v. Third Nat'l Bank*, 143 So. 768, 770 (Fla. 1932))).

Affirmed.

NORTHCUTT and MORRIS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.